IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERALD ANTHONY JUDGE and )
DAVID KINDLER, )
 )
      Plaintiffs, )
 )
      v. ) No. 09 C 1231
 )
PAT QUINN, GOVERNOR of the )
STATE OF ILLINOIS and ROLAND )
W. BURRIS, U.S. SENATOR, )
 )
      Defendants. )

**MEMORANDUM OPINION**

Before the court are defendants' motions to dismiss the complaint and plaintiffs' motion for a preliminary injunction. We grant defendants' motions and deny plaintiffs' motion for the reasons explained below.

**BACKGROUND**

The facts alleged in plaintiffs' complaint, which we accept as true for the purposes of defendants' motions, are mostly matters of public record. On November 16, 2008, then-President Elect Obama resigned his Senate seat, creating a vacancy that former-Illinois Governor Rod Blagojevich filled by executive order appointing defendant Roland Burris. (See Certificate of Appointment, dated December 31, 2008, attached as Ex. A to Pls.' Mem. in Supp. of Mot.

for Prelim. Inj. (hereinafter, "Pl. Mem.").)[1] The Certificate of Appointment provides that Senator Burris will serve until the seat is "filled by election as provided by law." (Id.) Under Illinois's Election Code, that election will be held at the next general congressional election in November 2010. See Illinois Election Code, 10 ILCS § 5/25-8. Plaintiffs, registered Illinois voters who intend to vote in the vacancy election, contend that the Seventeenth Amendment requires Governor Quinn to call a special election well in advance of that date. They have filed a two-count complaint, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02, asking us to (i) declare that § 25-8 is unconstitutional, and (ii) require Governor Quinn to "issue a writ for a special election to be conducted as soon as practical." (First Am. Compl. at 6-7.) We denied Senator Burris's request to appear as amicus curiae because we concluded that he must be joined as a party under Fed. R. Civ. P. 19. (See Order of Mar. 11, 2009.)[2] Plaintiffs have amended their complaint to join him as a defendant, and the parties' motions are now fully briefed.[3]

---

[1] Senator Burris was sworn in as a United States Senator for the State of Illinois on January 15, 2009.

[2] Senator Burris's amicus-curiae motion, which joins Governor Quinn's motion to dismiss with one exception discussed below, stands as his motion to dismiss.

[3] We have jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), and we concur with the parties' apparent agreement that plaintiffs have standing. See Valenti v. Rockefeller, 292 F.Supp. 851, 853 n.1 (W.D.N.Y. 1968), *aff'd per curiam*, 393 U.S. 405 (1969) (concluding that New York voters had standing to challenge the state's vacancy statute under the Seventeenth Amendment).

## DISCUSSION

**A. Whether the State is Prohibited from Conducting a Vacancy Election on a Date Other Than November 2, 2010.**

Senator Burris argues that federal statutes prohibit the state from conducting a vacancy election on any date except November 2, 2010. Because this is an ostensibly non-constitutional basis for denying at least one facet of plaintiffs' claims, we address it first. See Rehman v. Gonzales, 441 F.3d 506, 508 (7th Cir. 2006) ("Non-constitutional arguments always come first; constitutional contentions must be set aside until their resolution is unavoidable."). Article I, § 4, cl.1 of the Constitution authorizes the states to set the "Times, Places and Manner of holding Elections for Senators," but "only so far as Congress declines to preempt state legislative choices." Foster v. Love, 522 U.S. 67, 69 (1997); see U.S. Const. Art. I, § 4, c.1 (authorizing Congress to "make or alter" congressional-election regulations, "except as to the places of choosing senators"). Congress requires states to conduct Senate elections on the "Tuesday next after the 1st Monday in November" preceding the date when the incumbent Senator's term expires. See 2 U.S.C. §§ 1, 7. Senator Burris argues that these provisions apply to Senate vacancy elections. We disagree. Section 1 applies only to the regularly scheduled Senate election preceding the end of the incumbent's term in office. See 2 U.S.C. § 1 ("At the regular election held in any

State *next preceding the expiration of the term for which any Senator was elected* to represent such State in Congress, at which election a Representative to Congress is regularly by law to be chosen . . . .") (emphasis added). A separate provision authorizes states to prescribe the "time" for filling vacancies by election, including vacancies caused by resignation. See 2 U.S.C. § 8.[4] Section 8 refers only to "Representative[s]" and "Delegate[s]," but it has been construed to apply by implication to Senators as well. See Public Citizen v. Miller, 813 F.Supp. 821, 829 n.8 (N.D. Ga. 1993), *aff'd*, 992 F.2d 1548 (11th Cir. 1993); see also Foster, 522 U.S. at 71 n.3 (citing Public Citizen with approval). This provision authorizes the states to conduct vacancy elections on dates other than the date dictated by 2 U.S.C. §§ 1 and 7. See Public Citizen, 813 F.Supp. at 830; Busbee v. Smith, 549 F.Supp. 494, 524-25 (D.D.C. 1982), *aff'd*, 459 U.S. 1166 (1983).[5] Foster v.

---

[4] Section 8 provides, with an exception that does not apply in this case:

> [T]he time for holding elections in any State, District, or Territory for a Representative or Delegate to fill a vacancy, whether such vacancy is caused by a failure to elect at the time prescribed by law, or by the death, resignation, or incapacity of a person elected, may be prescribed by the laws of the several States and Territories respectively.

See 2 U.S.C. § 8.

[5] See also Trinsey v. Commonwealth of Pennsylvania, 941 F.2d 224, 226 (3d Cir. 1991) (upholding a statute requiring the Governor of Pennsylvania to declare a special election to fill a Senate vacancy in an odd-numbered year); Valenti, 292 F.Supp. at 855 (assuming without discussion that New York had authority to schedule a Senate vacancy election in an odd-numbered year). In authorizing a vacancy election on a date other than federal election day these cases appear to rely on the Seventeenth Amendment's vacancy clause rather than 2 U.S.C. § 8. Cf. Newberry v. United States, 256 U.S. 232, 252 (1921) ("As finally submitted and adopted the [Seventeenth Amendment] does not undertake to modify article 1, § 4, the source of congressional power to regulate the times, places and manner of

Love struck down Louisiana's "open primary" system, which in most instances led to the election of a Senator and/or Representative in the October preceding the November federal election. Foster, 522 U.S. at 70. It did not involve a vacancy created by resignation, and does not control the outcome of this case. We reject Senator Burris's argument that a vacancy election can only be held on November 2, 2010.[6]

**B.  The Seventeenth Amendment and Illinois's Vacancy Statute**

Before the states ratified the Seventeenth Amendment in 1913, United States Senators were appointed by state legislatures. See Laura A. Little, An Excursion Into the Uncharted Waters of the Seventeenth Amendment, 64 Temp. L. Rev. 629, 632 (1991). The Seventeenth Amendment eliminated that practice, providing for

---

holding elections."). But the result is the same whether this case is governed by § 8, the Seventeenth Amendment, or the states' default authority under Art. I, § 4, c.1 — a vacancy election may be conducted on a date other than federal election day.

[6]  Senator Burris argues for the first time in his reply brief that pursuant to Article I, § 5 of the Constitution only the Senate can "determine whether a special election is appropriate to curtail his present tenure." See U.S. Const. art. I, § 5 ("Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members . . . ."). Arguments raised for the first time in a reply brief are waived. See United States v. Diaz, 533 F.3d 574, 577 (7th Cir. 2008). And despite his argument's sweeping implications, Senator Burris has not cited any case law construing Article I, § 5. See United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). Even overlooking these defects, we are not persuaded that a special election would encroach upon the Senate's authority under Article I, § 5. See Roudebush v. Hartke, 405 U.S. 15, 25-26 (1972) (concluding that Indiana's recount procedures did not "usurp" the Senate's authority under Article I, § 5 because the Senate would ultimately decide which individual would be seated).

direct elections and prescribing the procedure for filling vacancies:

> When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: *Provided*, That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

U.S. Const. amend. XVII. Illinois, pursuant to the proviso, enacted the following vacancy statute soon after the states ratified the Seventeenth Amendment:

> When a vacancy shall occur in the office of United States Senator from this state, *the Governor shall make temporary appointment to fill such* vacancy *until the next election of representatives in Congress*, at which time such vacancy shall be filled by election, and the senator so elected shall take office as soon thereafter as he shall receive his certificate of election.

10 ILCS § 5/25-8 (emphasis added). Plaintiffs contend that this statute is unconstitutional because it usurps the governor's duty to call a special election, authorizes an impermissibly long period of time between the vacancy and the election, and compels (rather than "empowers") the governor to make a temporary appointment in the interim.[7] They rely in part on cases construing Article I, §2,

---

[7] Plaintiffs raised this last objection, which appears to be an issue of first impression, in what was effectively their reply brief supporting their preliminary-injunction motion. It is an entirely new and separate claim challenging Senator Burris's appointment, not the vacancy election's timing. And like Senator Burris's untimely argument, *supra* n.6, plaintiffs' new claim may raise significant standing and justiciability issues. These issues are undeveloped, at best, and defendants have not had an opportunity to be heard. If plaintiffs wish to pursue this claim in light of today's ruling, they should file an amended complaint. For purposes of the pending motions, we address only the operative complaint in this case.

cl.4, which governs the procedure for filling vacancies in the United States House of Representatives and contains language nearly identical to the Seventeenth Amendment's "writs-of-election" clause. See U.S. Const. art. I, § 2, cl. 4 ("When vacancies happen in the Representation from any State, the Executive Authority shall issue Writs of Election to fill such Vacancies."); Jackson v. Ogilvie, 426 F.2d 1333, 1336 (7th Cir. 1970) (concluding that the "writs-of-election" clause is mandatory and requires the governor to call a special election, subject to procedural rules set by the state legislature); American Civil Liberties Union v. Taft, 385 F.3d 641, 649 (6th Cir. 2004) (similar). That provision does not contain anything comparable to the Seventeenth Amendment's proviso, but plaintiffs argue that the proviso should be read narrowly to preserve the meaning of the writs-of-election clause as interpreted by Jackson and Taft. According to plaintiffs, the phrase "as the legislature directs" applies only to the procedures governing the special election (ballot access, voter registration, etc.) and not when (or whether) there will be a special election.

**C.   Valenti v. Rockefeller**

Both parties acknowledge that Valenti v. Rockefeller is central to this case. In Valenti, a three-judge district court concluded that a New York statute similar to § 25-8 was constitutional, 292 F.Supp. at 853, a decision that the United States Supreme Court summarily affirmed without an opinion. See

Valenti v. Rockefeller, 393 U.S. 405 (1969).  The vacancy in Valenti was created by Senator Robert Kennedy's assassination, which occurred fewer than 60 days prior to New York's spring primary in an even-numbered year.  Id. at 854.  Under New York election law, this meant that the vacancy would be filled at the general election in the next even-numbered year (November 1970), approximately 29 months after the vacancy arose.  Id.  The Valenti court rejected the plaintiffs' contention that Seventeenth Amendment's "proviso only allows the legislature to regulate the governor's power of temporary appointment and not the timing of vacancy elections."  Id. at 855.  A "natural reading" of the Amendment "grants the states some reasonable degree of discretion concerning both the timing of vacancy elections and the procedures to be used in selecting candidates for such elections."  Id. at 856.[8]  In reaching this conclusion, the court expressly rejected the argument that the Seventeenth Amendment requires a special election.  Id. (If the drafters had intended to require a special election, "it is likely that they would have employed clear

---

[8]/ In their supplemental memorandum plaintiffs argue that Valenti did not decide which branch of state government is authorized to set the date for the vacancy election.  They point out that Governor Rockefeller issued a writ of election and they insist that he, not New York's legislature, scheduled the election for November 1970. (See Mot. on Behalf of Appellee to Dismiss or Affirm, attached as Ex. H to Pl.'s Supp. Mem. in Support of its Mot. for Prelim. Inj., at 6.) We disagree with plaintiffs' contention that Valenti did not address the "who-decides-the-date" issue.  November 1970 was the date dictated by the statute pursuant to which Governor Rockefeller appointed Senator Kennedy's replacement. See Valenti, 292 F. Supp. at 854-55.  Here, then-Governor Blagojevich appointed Senator Burris to serve until an election is held "as provided by law."  In both cases, the state legislature enacted a statute setting the election's date and the governor issued an order complying with the statute.  Valenti holds that the Seventeenth Amendment permits this procedure.

language to that effect."). But the court also concluded that the legislature's discretion to schedule a vacancy election is not unlimited: "a Governor may make only a '*temporary*' appointment until an election is held." Id. (emphasis added). The question, then, was whether New York's vacancy statute exceeded "the limits of the discretion conferred upon the states by the Amendment." Id. Surveying other state vacancy statutes, including that of Illinois, the court concluded that they "reflect a consensus of the states that it is permissible for a 'temporary' appointee to hold office until the next regular congressional election before which there remains sufficient time to nominate candidates and conduct a campaign." Id.; see also Smiley, 285 U.S. at 369 (observing that "long and continuous interpretation in the course of official action under the law" is persuasive evidence of the law's meaning). New York's statute, and statutes like it, further "substantial state interests" by scheduling vacancy elections when "voter interest and turnout are at a maximum," and when it is most efficient and economical for candidates, who would otherwise have to raise money during an off-year, and for the state itself. Id.

Plaintiffs insist that the Supreme Court's summary affirmance in Valenti has "limited precedential force." See Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 180-81 (1979) ("[S]ummary affirmances have considerably less precedential value than an opinion on the merits."); see also Fusari v.

Steinberg, 419 U.S. 379, 391-92 (1976) (Burger, C.J., concurring) (specifically cautioning lower courts against relying too heavily on summarily affirmed opinions of three-judge district courts). They point out that in Governor Rockefeller's motion to dismiss or affirm he argued, among other things, that the appeal was moot because it was not possible to grant the relief that the plaintiffs had requested in their complaint — i.e., an injunction requiring that voters be given the opportunity to fill the vacancy at the November 5, 1968 election. (See Mot. on Behalf of Appellee to Dismiss or Affirm, attached as Ex. H to Pl.'s Supp. Mem. in Support of its Mot. for Prelim. Inj., at 8.)[9] Plaintiffs argue we should assume that the Court affirmed the judgment on that ground and not on the three-judge panel's decision resolving the constitutional question, effectively clearing the way for a contrary ruling. See Mandel v. Bradley, 432 U.S. 173, 179-90 (1977) (Brennan, J., concurring) ("The judgment should not be interpreted as deciding the constitutional questions unless no other construction of the disposition is plausible.").

We are not persuaded that Valenti affirmed the district court's judgment on mootness grounds,[10] and contrary to what

---

[9] The three-judge panel in Valenti conceded that it could not, as a practical matter, grant plaintiffs this relief given the lawsuit's timing, id. at 855 n.6, but concluded that this did not moot the case. Id. at 855 (considering whether New York was prohibited from "bypassing its general election in 1969 in favor of filling the vacancy in November 1970").

[10] Neither side has cited any facts or authority that would enable us to meaningfully assess whether Governor Rockefeller's mootness argument was a plausible ground for affirmance. But if, as Governor Rockefeller argued, the

plaintiffs seemed to suggest in their opening brief, we are not writing on a blank slate. The Court revisited Valenti in Rodriguez v. Popular Democratic Party, 457 U.S. 1 (1982), a case challenging the constitutionality of Puerto Rico's statutes authorizing political parties to appoint interim replacements for their members who vacate seats in Puerto Rico's legislature. "[W]hen a state or the Commonwealth of Puerto Rico has provided that its representatives be elected, 'a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction.'" Id. at 10 (quoting Dunn v. Blumenstein, 405 U.S. 330, 336 (1972)). The Court noted that in Valenti it had found "nothing invidious or arbitrary" in the fact that, at any given time, some Senators hold office "by virtue of popular election" and others "by virtue of interim appointment." Id. at 11. The Court went on to quote the majority opinion in Valenti: "[i]n this case we are confronted with no fundamental

---

plaintiff was constrained by the relief he had requested in his complaint (cf. Fed.R. Civ. P. 54(c)), then the case was moot when the lower court rendered its decision. In that case, the Court likely would have dismissed the appeal and vacated, not affirmed, the lower court's judgment. See Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of America, Division 998 v. Wisconsin Employment Relations Board, 340 U.S. 416, 418 (1951) ("A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it.") (internal citations and quotation marks omitted); see also 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3533.10 (3d Ed. 2008) ("No difficulty is encountered if an action is moot at the time of the lower court's decision — any decision on the merits is vacated, even if the trial court both ruled that the action was moot and alternatively addressed the merits."). Moreover, the Seventeenth Amendment question was squarely presented in the appellant's jurisdictional statement. See Statement of Jurisdiction, 1968 WL 112482, *4; cf. Illinois State Board of Elections, 440 U.S. at 182.

imperfection in the functioning of democracy . . . . We have, rather, only the unusual, temporary, and unfortunate combination of a tragic event and a reasonable statutory scheme." Id. (quoting Valenti, 292 F.Supp. at 867). The Court conceded that Valenti was not controlling, but nevertheless concluded that the decision was relevant and persuasive:

> Valenti, of course, unlike this case, involved an interpretation of the Seventeenth Amendment, which explicitly outlines the procedures for filling vacancies in the United States Senate. See n. 7, *supra*. However, the fact that the Seventeenth Amendment permits a state, if it chooses, to forego a special election in favor of a temporary appointment to the United States Senate suggests that a state is not constitutionally prohibited from exercising similar latitude with regard to vacancies in its own legislature.

Id. Our Court of Appeals relied on this same language in a case decided shortly after Rodriquez upholding a comparable provision applying to aldermanic vacancies. See Lynch v. Ill. State Board of Elections, 682 F.2d 93, 96 (7th Cir. 1982) ("Rodriquez and Valenti clearly show that section 3-2-7 is not constitutionally infirm. Both decisions sustain the authority to fill vacancies in elective offices by appointment, even though the appointee will hold office for the duration of the term.").

Although the Rodriquez Court discussed Valenti in dicta, we cannot lightly disregard the Supreme Court's "considered" statements. See United States v. Bloom, 149 F.3d 649, 653 (7th Cir. 1998) ("It would ill serve the interests of litigants and the judicial system as a whole to row against the tide of such

statements."). The analogy in <u>Rodriguez</u> to <u>Valenti</u> and the Seventeenth Amendment was not "an aside unrelated to the subject matter of the case," <u>id.</u> — the parties briefed the issue and it played a meaningful role in the Court's reasoning. See <u>Rodriguez</u>, 457 U.S. at 11 (The procedure that the Court "sustained" in <u>Valenti</u> to fill Senate vacancies "suggests that a state is not constitutionally prohibited from exercising similar latitude with regard to vacancies in its own legislature."). <u>Rodriguez</u> and <u>Valenti</u> squarely contradict plaintiffs' textual interpretation, pursuant to which they argue that Illinois *cannot* "forgo a special election in favor of a temporary appointment." <u>Id.</u>; cf. <u>Jackson</u>, 426 F.2d at 1336. <u>Rodriguez</u> also confirms that the Court was not troubled by the length of the 29-month delay between the vacancy and the election in <u>Valenti</u>. <u>Id.</u> at 10-11 (citing the Court's affirmance and observing that it had "sustained the authority of the Governor of New York to fill a vacancy in the United States Senate by appointment pending the next regularly scheduled congressional election — in that case, a period of over 29 months").

Because the vacancy in this case arose shortly after President Obama's election on November 4, 2008, nearly two years will elapse before the vacancy is filled by election. This is nearly the longest delay that § 25-8 permits, and still it is well within the period that <u>Valenti</u> allowed. Moreover, the principle that it is

more efficient and economical to conduct multiple elections on the same date remains sound.  See Lynch, 682 F.2d at 97 (eliminating special elections for aldermanic vacancies furthered the state's interest in reducing election costs and maximizing voter turnout).  Plaintiffs respond that there are competing considerations specific to Senator Burris's appointment, and not raised by Valenti's facts, that justify a different result.  At the time that he appointed Senator Burris, then-Governor Blagojevich was charged with serious crimes stemming, in part, from his alleged attempts to "sell" President Obama's vacated Senate seat.  Plaintiffs argue that the Seventeenth Amendment was adopted, in part, to deter this sort of corruption.  See Little, *supra*, at 639-40.  But the constitutional standard that they advocate, whereby a state statute may or may not violate the Seventeenth Amendment depending upon the circumstances surrounding a particular appointment, is misguided and unworkable.  Under Valenti, Illinois's statutory scheme is reasonable; the fact that the circumstances of this particular appointment have become one of the subjects of a criminal indictment is constitutionally irrelevant.

Applying Valenti and Rodriquez, we conclude that § 25/8 does not violate plaintiffs' right under the Seventeenth Amendment to vote in the direct election of their Senator.  Accordingly, they are not entitled to a declaratory judgment to the contrary.  And because the allegations in their First Amended Complaint do not

state a constitutional violation, plaintiffs are not entitled to injunctive relief under § 1983. Defendants' motions to dismiss are granted.

## **CONCLUSION**

Governor Quinn's motion to dismiss (19), and Senator Burris's motion to dismiss (23), are granted. The complaint is dismissed. Plaintiffs' motion for a preliminary injunction (14) is denied. Plaintiffs are given until May 1, 2009 to file an amended complaint.[11] If they do not do so, this cause will be dismissed with prejudice.

DATE:     April 16, 2009

ENTER:    _____
          John F. Grady, United States District Judge

---

[11] See *supra* n.7.